## LYNN AND BOSTON RAILROAD COMPANY *vs.* BOSTON AND LOWELL RAILROAD CORPORATION.

After a bill in equity had been filed by a street railway corporation against a steam railroad corporation to restrain it from building its road across a highway upon which the street railway was laid, at a level with the highway, the county commissioners authorized the railroad corporation to cross the highway at a level. *Held*, that the bill must be dismissed.

BILL IN EQUITY alleging that the plaintiff corporation, (a horse railroad company,) under leases and contracts with the Boston & Chelsea Railroad Company, were using the tracks of the last mentioned corporation ; that these tracks were laid over Chelsea Bridge, which had formerly been a turnpike, but by St. 1868, c. 309, had become a public highway ; that the eastern portion of the bridge was in the county of Middlesex ; that the plaintiffs occupied the easterly portion of the bridge with their tracks, and drew over them their cars and passengers ; that they ran their cars from six o'clock in the morning to twelve at night, making 224 trips a day ; that the travel in their cars was very great ; that for the next fortnight, commencing on Monday, June 17, there was to be held in the city of Boston a musical festival, to attend which, great multitudes of people would come from all parts of the country ; that a great concourse from the city of

Chelsea and the adjoining towns would on each day of that festival visit the city and require to be carried in the cars to and from the city over the bridge ; that the plaintiffs were bound by their charter and by their leases and contracts to transport these passengers to and from Boston, and to furnish them reasonable accommodation ; that they had arranged to increase largely the number of the trips of their cars for that purpose ; that any interruption of the travel would be attended with great and irreparable loss and damage to them, and would deprive the public of their reasonable accommodation in travelling to and from said city of Boston and over the bridge. The bill then alleged that the Mystic River Railroad Corporation was authorized to construct a railroad over certain flats and across Chelsea Bridge ; that the Boston and Lowell Railroad Company had been authorized to purchase and had purchased the Mystic River Railroad, and were about constructing it across Chelsea Bridge and across the track of the plaintiffs, upon a level with the bridge and track, without any authority in law ; that the Boston and Lowell Railroad Company had made no application whatever to the county commissioners of the county of Middlesex, in which county the crossing was, for any order, decree or direction in regard to the mode of constructing their road at the crossing, or in regard to any alteration in the bridge, but were proceeding in the matter in utter disregard of law ; that they had already taken up a portion of the planking of the bridge and were driving piles for the support of their tracks in the space from which the planking had been removed ; that they threatened to commence on June 17 to remove the planking from the portion of the bridge on which the plaintiffs' track was laid, and to place a pile-driving machine upon the tracks to drive piles for supporting their own tracks across the bridge, and to remove the tracks of the plaintiffs and to lay the tracks of the Boston and Lowell Railroad Company across them, and thereby interrupt the travel and the passage of the plaintiffs' cars. The bill prayed for an injunction, and for other relief.

The defendants in their answer admitted that they were about to commence the construction of a track within the location of

the Mystic River Railroad, across and at a level with Chelsea Bridge, and that the track when completed would cross the plain-tiffs' track, and would be upon a level with it, but denied that it would be constructed in violation of law, or that any application to the county commissioners of Middlesex County was requisite for the purpose; and denied that it infringed the rights of the public or of the plaintiffs, and alleged that, to obviate any possible wrong and remove all grounds of complaint, they had applied to the commissioners at a regular meeting since the filing of the bill, and that the commissioners then (due notice of the application having been given to all parties interested, and they having ap-peared and been heard and the matter duly considered) had decreed and determined the crossing at grade to be of public necessity, and had authorized it.

This cause came on for hearing on bill and answer before *Gray,* J., when the following facts, in addition to those stated in the bill and admitted in the answer, were agreed: The agreement be-tween the Salem Turnpike and Chelsea Bridge Company, of the first part, and the Boston and Chelsea Railroad Company, of the second part, was put in by the plaintiffs, by which it was pro-vided that the railroad company, by the payment of an annual sum of $2346, was to have the right to lay tracks upon and to use the turnpike and bridge, and no other railroad company was to be permitted to pass over the same without the written consent of both parties to the agreement. It was agreed that, so far as it could be done by contracts by subsequent instruments between the parties, the plaintiffs became vested with all the rights and stood in the place of the Boston and Chelsea Railroad Company under the agreement, and operated the road of that corporation; that the track of the horse railroad was laid within its location on the easterly side of Chelsea Bridge; that the allegations of the bill concerning the extent of the use of the tracks by the Lynn and Boston Railroad Company were true; that since the filing of the bill the defendants had applied to the county commissioners, and had obtained from them permission to lay their tracks across Chelsea Bridge, as set forth in the answer. The plaintiffs con-tended that upon the facts the defendants had no right to lay their

tracks across the tracks of the plaintiffs, but the court ordered that the bill be dismissed; from which decree the plaintiffs appealed.

*W. W. Warren*, for the plaintiffs.

*J. G. Abbott*, for the defendants, was not called upon.

MORTON, J. The rights in the highway, acquired by a street railway corporation, under a charter like that of the plaintiffs, are of a limited and qualified nature. It has the right to use the highway in common with the general public, but it has no exclusive control of it, and no right or title in it which precludes the public authorities from making such use of it as the public exigencies require. *Middlesex Railroad Co.* v. *Wakefield*, 103 Mass. 261. *Metropolitan Railroad Co.* v. *Quincy Railroad Co.* 12 Allen, 262. *Union Railway Co.* v. *Mayor, &c. of Cambridge*, 11 Allen, 287.

The enactment of a statute authorizing a railroad corporation to construct a road over a given route, necessarily involves a determination by the Legislature that the public exigency requires such road. It may, by a direct provision, authorize the corporation to build its road on a level with any highway which it crosses. In the absence of any express provision, the power of deciding whether public necessity requires that the railroad should be built on a level, is delegated to the county commissioners. St. 1865, *c.* 239.

If they so decide, it is an appropriation of the highway to a public use by the authority of the Legislature. It necessarily modifies, to some extent, the general use of the highway, but neither those who have occasion to travel over it, nor a street railway corporation which has a right to use it in common, can object. They hold their rights to use it in subordination to the power of the public authorities to determine what other use of it is demanded by public necessity.

There is nothing in the charter or situation of the plaintiffs which gives them greater rights in this respect than those held by other street railway corporations. The turnpike of the Salem Turnpike and Chelsea Bridge Corporation was laid out as a highway by the St. of 1868, *c.* 309. It thus became a highway, sub-

ject to all the laws regulating the use of highways, unless they were modified by the act laying it out or by the act in amendment thereof passed the same year. The plaintiffs rely upon the proviso introduced by the last named act, which is as follows : " Provided that said highway shall be subject to all the leasehold and chartered rights and liabilities of the Lynn and Boston, and the Boston and Chelsea railroad corporations." The charter and lease authorize the plaintiffs to build and maintain their road over the turnpike and bridge, but do not give them the exclusive use or control of them. This road and bridge, before it was made a highway, was subject to the liability of being crossed by a railroad on a level, by the order of the county commissioners, the statutes extending to turnpikes as well as to public highways. The proviso was intended to preserve but not to enlarge the rights of the plaintiffs, and cannot be construed to take away or limit the power of the Legislature to authorize a railroad to cross the highway on a level if public necessity requires it. It seems to us clear, therefore, that the defendants, having obtained an adjudication of the county commissioners that public necessity requires that their road should cross this highway on a level, had the right so to build it. Though this adjudication was made after this bill was filed, its necessary effect is to defeat the prayer of the bill for an injunction. As this view is decisive of the case, it is not necessary to consider the other questions raised.

*Bill dismissed.*